UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DALE L. VORNDRAN, | No. CV 12-9010-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 19, 2012, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 26, 2012, and December 4, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 5, 2013, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 14, 1954. [Administrative Record ("AR") at 70.] He has a college education [AR at 162] and past relevant work experience as an assistant controller and a director of fiscal operations. [AR 157.]

On April 22, 2008, plaintiff filed his application for Disability Insurance Benefits and protectively filed his application for Supplemental Security Income payments, alleging that he has been disabled since March 2, 2005, due to HIV, hepatitis C, pneumonia, cirrhosis of the liver, osteoporosis, edema, scabies, diabetes, cellulitis, and fatigue. [AR at 70-73, 92-95, 138-47, 156-63, 201-08, 233-40.] After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 92-96, 99-104.] A hearing was held on May 27, 2010, at which time plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 27-69.] On November 16, 2010, the ALJ determined that plaintiff was not disabled. [AR at 77-86.] On April 30, 2012, the Appeals Council denied plaintiff's request for review. [AR at 4-8, 26.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

1  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
2  case of disability is established. The Commissioner then bears the burden of establishing that
3  the claimant is not disabled, because he can perform other substantial gainful work available in
4  the national economy. The determination of this issue comprises the fifth and final step in the
5  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966
6  F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since his alleged disability onset date, March 2, 2005. [AR at 79.][1] At step two, the ALJ concluded that as of the alleged onset date, plaintiff has had the following combination of severe impairments: "chronic HIV infection and substance (crystal methamphetamine) abuse." He further found that beginning September 2007, plaintiff "also establishes chronic Hepatitis C (status post biopsy) (with hepatomegaly), chronic jaundice, portal hypertension (status post banding of esophageal varices on December 16, 2009 and January 26, 2010[,] and gastropathy, splenomegaly, chronic gastritis, cerebral atrophy, thrombocytopenia, spondylosis of the lumbosacral spine[,] and remission of substance (crystal methamphetamine) abuse since February 2008 or March 2008." [AR at 79-80 (citations omitted).] At step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. [AR at 81.] The ALJ further found that plaintiff retains the residual functional capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[3] "except he is able to lift and/or carry 20 pounds occasionally and 10

---

[1] The ALJ concluded that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2010. [AR at 79.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] 20 C.F.R. §§ 404.1567(b), 416.967(b) define "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and
(continued...)

pounds frequently, stand and/or walk for six hours total in an eight-hour day, sit for six hours total in an eight-hour day, and perform postural activities occasionally but cannot be exposed to heights, ladders, scaffolding, or hazards." [AR at 82.] At step four, the ALJ concluded that plaintiff is able to perform his past relevant work as an audit clerk/supervisor, an accounting clerk, and a tax accountant. [AR at 85.] Accordingly, the ALJ found that plaintiff was not under a disability from March 2, 2005, through November 16, 2010, the date of the decision. [AR at 85-86.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ improperly: (1) discounted plaintiff's credibility, and (2) failed to find that plaintiff does not suffer from a medically determinable mental impairment. [Joint Stipulation ("JS") at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

**A.   STEP-TWO ANALYSIS**

Plaintiff contends that the ALJ erred by finding that he does not have a medically determinable mental impairment. [JS at 24-27, 32-33.]

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by

---

[3](...continued)
requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work).

An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "physical functions ...," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

In assessing the severity of a claimant's alleged mental impairment, an ALJ is required to reflect in the decision his consideration of plaintiff's mental functional limitations under four broad criteria (also known as the "paragraph B criteria"): (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00C; see also 20 C.F.R. §§ 404.1520a, 416.920a. If a claimant is rated as having greater than "mild" limitations in any of the first three criteria or more than no episodes of decompensation in criteria four, or if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities," then the claimant's mental impairment should be found to be "severe." 20 C.F.R. §§ 404.1520a, 416.920a; see also 20 C.F.R. §§ 404.1521, 416.921.

6

On July 3, 2008, Dr. Ernest A. Bagner performed a complete psychiatric evaluation of plaintiff. [AR at 467-70.] Plaintiff told Dr. Bagner: "My boyfriend died recently,"[4] and reported depression with crying spells, nervousness, feelings of helplessness and hopelessness, and difficulty with concentration and memory. [AR at 467.] Plaintiff was not seeing a psychiatrist or counselor at that time. With respect to his level of functioning, plaintiff reported to Dr. Bagner that he could care for his personal needs, perform household chores, cook, run errands, and shop. [AR at 468.] Dr. Bagner's mental status examination reflected that plaintiff's mood was congruent with his feeling "depressed"; his speech was intact and coherent but moderately decreased in rate, rhythm, and volume; his thought processes were "tight"; his memory and concentration were such that he could register two out of three objects after five minutes; he did not display any evidence of hallucinations, paranoia, or delusions; and he denied suicidal ideations. [AR at 469.] Dr. Bagner diagnosed plaintiff with depressive disorder, not otherwise specified, and opined that plaintiff would have zero to mild limitations in maintaining concentration and attention, and in completing simple tasks; mild limitations in completing complex tasks; and mild to moderate limitations handling stresses at work and completing a normal workweek without interruption. [AR at 469-70.] Dr. Bagner also opined that if plaintiff "receives psychiatric treatment, he should be significantly better in less than six months." [AR at 470.]

On July 15, 2008, Dr. R.E. Brooks completed a psychiatric review technique concerning plaintiff. [AR at 471-81.] Dr. Brooks acknowledged Dr. Bagner's evaluation notes and findings [AR at 481], and diagnosed plaintiff with depression [AR at 474], but opined that plaintiff's depression did not result in any paragraph B limitations, and that it was not a "severe" impairment. [AR at 471, 479.]

The ALJ found at step two that "there is no evidence that a depressive disorder persisted for 12 consecutive months." [AR at 80.] The ALJ also stated that because there is no evidence in the record other than Dr. Bagner's evaluation that plaintiff has depression, he "[did] not accept

---

[4] A treating note reflects that plaintiff's partner died on May 2, 2008. [AR at 499.]

7

the diagnosis of [Dr. Bagner] or the assessment of [Dr. Brooks]." [See AR at 80-81 (citations omitted).]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. See id. at 830-31. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [examining] doctors', are correct." Id.

Here, the ALJ gave clear and convincing reasons for rejecting Dr. Bagner's and Dr. Brooks' opinions that plaintiff has depression. First, the ALJ pointed out that less than two and one-half months before Dr. Bagner's evaluation, i.e., on April 22, 2008, plaintiff had denied feeling depressed. [AR at 80, 371.] Second, the ALJ noted that even though plaintiff reported depression and crying spells at the time he was evaluated by Dr. Bagner, and that plaintiff's boyfriend had recently died (on May 2, 2008), plaintiff was not then seeing a psychiatrist or counselor. [AR at 80.] Third, the ALJ stated that while a March 18, 2009, treating note indicates that plaintiff complained at that time of insomnia and asked for Ambien, a treating note from March 22, 2010 -- one year later -- reflects that plaintiff had been referred to a social worker and a psychiatrist before that date for insomnia and his history of drug abuse, but had not yet made an appointment. [AR at 80, 866, 980.] Finally, the ALJ pointed out that treating notes from March 22, 2010, and April 7, 2010, stated that plaintiff exhibited "no depression" on those dates. [AR at 80, 972-75, 976-79.]

The ALJ accurately discussed all of the evidence in the record supporting and detracting from plaintiff's assertion of disability based on depression, interpreted that evidence, and found that "there is no evidence that a depressive disorder persisted for 12 consecutive months." Plaintiff does not point to, nor is the Court aware of, any evidence in the hundreds of pages of medical records, other than Dr. Bagner's evaluation, demonstrating that plaintiff reported feeling depressed or sought treatment for depression. The ALJ's conclusion on this issue is supported by substantial evidence, and remand is therefore not warranted.[5]

**B.  PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and

---

[5] In any event, even if it was error to find plaintiff's depression not severe at step two, that error would be harmless. As noted supra, Dr. Bagner's evaluation is the *only* evidence in the record of plaintiff's depression, and thus there is no evidence that plaintiff's depression -- whether severe or non-severe -- persisted for twelve months. Accordingly, there is also no evidence that his depression affected his functional limitations for any period of twelve months or more. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (harmless error is error that is "inconsequential to the ultimate nondisability determination") (citation and internal quotations omitted).

(5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff stated in his disability reports that he cannot work because his impairments cause him extreme lethargy, uncontrollable episodes of diarrhea, and forgetfulness, and prevent him from being able to walk.  [AR at 156, 202, 234, 238.]

At the administrative hearing, plaintiff testified that his impairments cause him fatigue and problems with his memory and concentration.  [AR at 42, 44, 47, 51.]  He stated that "[c]oncentration [was] the biggest problem" he had at the time of the hearing.  [AR at 51.]  He reported that he takes "a host" of medications every day, including medications for his HIV, edema, liver, and diarrhea, as well as magnesium for his memory and sleeping pills.  [AR at 53-55.]  When plaintiff was asked whether he has any side effects from his medications, he stated, "I'm constipated all the time from the diarrhea pills."  [AR at 54.]  With respect to his daily activities, plaintiff testified that he can perform gardening in "pots rather than in the dirt," but cannot use a weed eater; can perform chores such as "light vacuuming," but not scrubbing; can drive short distances; and goes to Costco and Alcoholics Anonymous meetings with his partner or his roommates.  [AR at 55-56, 58, 64.]  Plaintiff further testified that approximately twice a week, he volunteers at a theater, where he sweeps leaves and cigarette butts for sixty to ninety minutes at a time. Afterwards, however, he is "worn out."  [AR at 58-59, 64.]  Plaintiff stated that he could not perform his past job as a director of fiscal operations because that job required him to constantly get up and sit back down.  [AR at 35, 59-60.]  He explained that with respect to a job that involved "moving around," it would be easier for him to concentrate, but he would get "worn out" after only ninety minutes, and would not be able to begin working again even after a break.  [AR at 61-62.]  When plaintiff was asked whether he could perform a job in which he was constantly sitting, he testified that he could not because he would lose concentration, as he can only concentrate on one thing for five to thirty minutes at a time.  [AR at 60.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." [AR at 82.] The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]." [AR at 82-83.] Thus, at step two, as the record contains no evidence of malingering by plaintiff,[6] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ rejected plaintiff's subjective symptom testimony because he found that: (1) "the longitudinal progress notes from treating sources contradict [plaintiff's] allegations ... regarding chronic and debilitating symptoms"; (2) "multiple consultative physicians opined that [plaintiff] is capable of performing at least a range of light work"; (3) no "treating source opined that [plaintiff] has been physically unable to work for at least 12 continuous months"; and (4) "[t]he record contains numerous references regarding [plaintiff's] failure to follow prescribed treatment." [AR at 83.] Three of these reasons were legally adequate to discount plaintiff's credibility.[7]

First, the ALJ's finding that "the longitudinal progress notes from treating sources contradict [plaintiff's] allegations ... regarding chronic and debilitating symptoms" is supported by substantial evidence. While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

---

[6] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[7] As the determination of a claimant's ultimate disability is reserved to the Commissioner (see 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)), the Court does not find that the ALJ's third reason for rejecting plaintiff's subjective symptom testimony was clear and convincing.

11

(finding that while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider). Specifically, the ALJ discussed treating notes reflecting that with respect to plaintiff's HIV, he was doing well and able to perform "normal activity" when he was on his medications. The ALJ also stated the evidence showed that "[plaintiff's] weight has remained relatively stable, that he has no significant and chronic neurological deficits, such as muscle wasting or the need for an assistive device to ambulate, and that his various physical impairments can be dealt with effectively with appropriate treatment."[8] [AR at 83.]

Concerning plaintiff's HIV, the ALJ noted that treating notes on April 22, 2008, and May 16, 2008, reflect that plaintiff's Karnovsky Score[9] on those dates was 90, indicating that he was "able to carry out n[orma]l activity." [AR at 83, 370-72, 435-41.] The ALJ also noted that plaintiff reported on October 30, 2008, that he was "feeling a lot better after [he] started on HIV medication," and stated on March 4, 2009, that apart from having some difficulties with concentration once distracted, he was doing "well" and did not "feel[] slowed down." [AR at 83, 490, 887.] Plaintiff continued to report that he was "doing well and feeling well" in April, June, September, October, and December 2009, as well as in March 2010. [AR at 763, 782, 815, 833, 847, 976-88.] This evidence supports the ALJ's finding that plaintiff's physical impairment of HIV "can be dealt with effectively with appropriate treatment." Further, the ALJ's determination that plaintiff's "weight has remained relatively stable" is consistent with records reflecting that plaintiff weighed 180 pounds in February and March 2005; 178 pounds in May 2005; 176 pounds in July 2005; 175 pounds in September 2005; 179 pounds in April 2008; 210 pounds in March 2010; and 204 pounds in April 2010. [AR at 267-68, 278-279, 370, 973, 987.] A January 2008, treating note that referred plaintiff for a colonoscopy also noted that "his weight has been stable." [AR at 520-

---

[8] The ALJ also stated that, as discussed in the step two portion of his decision, plaintiff's "depression did not persist for 12 continuous months." [AR at 83.]

[9] Defendant states in the Joint Stipulation that: "The Karnovsky performance scale classifies patients according to their functional abilities. A score of 90 indicates 'Ability to carry on normal activitiy; minor signs or symptoms of disease.'" [JS at 21 (quoting http://www.aidsetc.org/aidsetc?page=cg-211_karnofsky_scale).] Plaintiff does not dispute this definition of the Karnovsky performance scale, or of a Karnosvky performance score of 90. [See JS at 32-33.]

22.] Finally, the ALJ accurately stated that the medical evidence indicates that plaintiff "has no significant and chronic neurological deficits, such as muscle wasting or the need for an assistive device to ambulate." Plaintiff does not identify, nor is the Court aware of, any record reflecting that plaintiff needs an assistive device to ambulate, or that he has had any muscle atrophy.

Second, the ALJ discounted plaintiff's credibility because he found that "multiple consultative physicians opined that [plaintiff] is capable of performing at least a range of light work." This finding by the ALJ is supported by the record. Two different nonexamining physicians opined that plaintiff can perform medium work,[10] and a third nonexamining physician opined that plaintiff can perform light work. [AR at 459-64, 554-55, 994-1002.] The ALJ gave greater weight to the opinion of the third nonexamining physician, finding that he "had the opportunity to review a significant amount of medical evidence that was unavailable to [the two other nonexamining physicians]." [AR at 84.] The ALJ's reliance on the opinions of these physicians concerning the severity and effects of plaintiff's symptoms was a clear and convincing reason to discredit his testimony. See Thomas, 278 F.3d at 958-59.

Finally, the ALJ rejected plaintiff's subjective statements because he found that "[t]he record contains numerous references regarding [plaintiff's] failure to follow prescribed treatment." An ALJ may properly rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to discredit a claimant's subjective symptom testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284) (internal quotations omitted). In doing so, however, an ALJ must consider a claimant's explanation for failing to undergo the recommended treatment. See Smolen, 80 F.3d at 1284. Where a claimant provides "evidence of a good reason" for not following the prescribed treatment, his symptom testimony cannot be rejected for not doing so. See id. (citations omitted).

Concerning plaintiff's failure to follow prescribed treatment, the ALJ noted that while plaintiff's treating physician from 2005 repeatedly advised plaintiff to discontinue his use of crystal

---

[10] 20 C.F.R. §§ 404.1567(c), 416.967(c) define "medium work" as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

methamphetamine, he refused "and continued to use the illicit drug for years." [AR at 83.] This is consistent with the evidence in the record. Plaintiff admitted using crystal methamphetamine in December 2004, as well as in February, May, July, August, and September 2005. [AR 267-69, 278-79, 340.] In August 2005, plaintiff declined a referral to an inpatient treatment program for his drug use, and in September of that year, he expressed that he did not wish to participate in a rehabilitation program at that time. [AR at 267.] There are no records for 2006 in the Administrative Record, and only one from 2007. [See AR at 295.] The last mention of plaintiff's drug use is in September 2008, when a treating note stated that plaintiff "went to Tarzana Treatment Center for drug detox and now waiting for a bed for in-patient rehab program." [AR at 491.]

In addition, the ALJ pointed out that plaintiff stated in July 2005 that he had been erratic in taking his HIV medications, but then admitted in August 2005 that he actually had not been taking his antivirals for several months. [AR at 84, 267, 269.]

The ALJ also discussed plaintiff's failure to undergo treatment for his memory loss and forgetfulness. When plaintiff complained of those symptoms in July 2008, his doctor recommended a lumbar puncture to rule out neurosyphilis, but plaintiff "refused" the treatment. [AR at 915.] He was advised to reconsider the treatment in December 2008, and stated he would "think about it." [Id.] In January 2009, plaintiff again refused the lumbar puncture, as well as a treatment option involving a "Penicillin G Procain injection," but agreed to a third form of treatment. [AR at 911.] It appears that plaintiff was subsequently referred to a hepatologist, as a treating note from March 2009 states that plaintiff "still has not made app[ointmen]t for [follow up] visit with hepatologist yet," and also states that: "Adherence issue reinforced and advised [plaintiff] to make app[ointmen]t with hepatologist for [follow up]." [AR at 866.] In May 2009, plaintiff saw his doctor for "continuing problems" with concentration. The treating doctor noted: "Given [plaintiff's] h[istory] o[f] syphilis, [he] should have a[] [lumbar puncture] but [plaintiff] defers at this time and ... reports having been treated [with] [follow up] [lumbar punctures] in [the] past." [AR at 837-38.] In September 2009, a lumbar puncture was finally attempted, "but only blood was obtained" and the procedure was aborted. [AR at 816.] Later that month, a treating note stated that plaintiff "had

unsuccessful [lumbar puncture]," and that plaintiff "agreed to start on neurosyphilis treatment," which included a series of Penicillin G Procaine injections. [AR at 784-93, 803.] By October 2009, plaintiff reported that "his memory [was] improved significantly," and by December 2009, plaintiff reported "no memory complaints." [AR at 766, 782.]

At the administrative hearing, when the ALJ asked plaintiff why he had refused the lumbar puncture treatment from July 2008 to September 2009, plaintiff testified that he had done "three treatments twice" in the summer of 2008, and he was "just feeling a little punctured out." [AR at 47-48.] Plaintiff also stated:

> [W]hen I was presented with the lumbar puncture, the treatment that they would do afterwards was the same thing whether I got the ... lumbar puncture or not. So, if they were going to treat it exactly the same way, I thought, well, ... why go through that procedure? But I ended up going through [with the lumbar puncture] anyway.

[AR at 48.] The Court does not find that either of plaintiff's explanations on this issue constitutes "a good reason" to refuse to follow his doctors' prescribed treatment for his memory problems for more than one year. See Smolen, 80 F.3d at 1284. Accordingly, based on the evidence of plaintiff's repeated declination of this treatment -- which the ALJ discussed in detail -- substantial evidence supports the ALJ's conclusion that plaintiff "did not consider his subjective memory complaints so severe as to warrant a lumbar puncture or penicillin until September 26, 2009." [AR at 84.]

The ALJ's rejection of plaintiff's pain testimony on the basis that he failed to follow prescribed treatment and instructions with respect to his illicit drug use, his HIV, and his memory problems, was clear and convincing.

Because the ALJ provided multiple clear and convincing reasons to discount plaintiff's allegations of pain and other subjective symptoms, his credibility determination must be upheld. See Green, 803 F.2d at 532. Remand is not warranted on this contention of error.

/

/

**VI.**

15

## **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 12, 2013

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE